IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 22, 2014 Session

# THE SJR LIMITED PARTNERSHIP v. CHRISTIE'S INC. ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH1217622      Arnold B. Goldin, Chancellor

## No. W2013-01606-COA-R3-CV - Filed March 5, 2014

In this case, we are asked to determine whether this Court has subject matter jurisdiction over this interlocutory appeal from the trial court's denial of Appellant's Tennessee Rule of Civil Procedure 12 motion to dismiss. The Tennessee Uniform Arbitration Act, Tennessee Code Annotated Section 29-5-319, grants Tennessee appellate courts subject matter jurisdiction to consider interlocutory appeals only in specifically enumerated circumstances involving arbitration agreements. The statutory exceptions include appeals from orders denying an application to compel arbitration, and appeals from orders granting an application to stay arbitration. Because the order appealed in this case is simply a denial of a Tennessee Rule of Civil Procedure 12 motion to dismiss, it does not fall within the statutory exceptions. Accordingly, this Court does not have jurisdiction to consider the appeal. Dismissed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Jeffrey C. Smith, Memphis, Tennessee, and William L. Charron, New York, New York, for the appellant, Christie's Inc.

Thor Y. Urness, Edmund S. Sauer, and Kristi M. Wilcox, Nashville, Tennessee, for the appellee, The SJR Limited Partnership.

OPINION

The SJR Limited Partnership ("SJR," or "Appellee") is a Tennessee family partnership, which was formed by Sarah Hohenberg and her children, Jason Hohenberg and Rachel Hohenberg. The Hohenbergs formed SJR to hold a rare collection of William Eggleston photography that they obtained while helping Mr. Eggleston during the early stages of his career.

In late 2011, SJR negotiated with Christie's, Inc. ("Christie's," or "Appellant") to auction several works from SJR's Eggleston collection at an auction in New York. Representatives from Christie's flew to Memphis to evaluate SJR's collection. Allegedly both Joshua Holderman, Christie's Head of Photography, and Laura Peterson, Christie's Vice President of Photography, verified the authenticity of SJR's signed Eggleston works. SJR and Christie's reached an agreement for consignment and sale of twelve works from SJR's Eggleston collection (the "Agreement"). It is the parties' dispute over the contents of this Agreement that gives rise to the instant appeal.

Specifically, the Agreement contains an alternative dispute resolution ("ADR") provision, which provides:

> Before either we or you start any court proceedings (except in the limited circumstances where the dispute, controversy or claim is related to a lawsuit brought by a third party and this dispute could be joined to that proceeding) we shall consent to the mediation of any dispute following the mediation procedure of JAMS with a mediator affiliated with JAMS and mutually acceptable to each of us. . . . If the dispute is not settled by mediation within 60 days from the date when mediation is initiated by either of us, then the dispute shall be referred to and finally resolved by arbitration in New York. . .

The Agreement specifies that the term "we" is defined to mean "Christie's," and the term "you" is defined to mean "the seller (i.e., SJR)."

Following execution of the foregoing Agreement, SJR shipped the twelve Eggleston works to Christie's for the auction. Upon receipt, Christie's employees, including Mr. Holderman, allegedly re-verified the authenticity of the works and the signature of Mr. Eggleston on each of them. Subsequently, however, Christie's removed five of the works from the scheduled list of art to be auctioned, and the auction was scheduled for April 5, 2012. Three days before the scheduled auction, the Director of the Eggleston Artistic Trust raised last-minute concerns about the authenticity of six of the seven remaining SJR works

2

that were scheduled for auction. The Trust's Director claimed that based on his review of the images of the six prints, the artist's signatures may have been forged. As the result of this allegation, Christie's refused to auction the six works that had been called into question by the Trust. Accordingly, only one of SJR's Eggleston photographs was auctioned by Christie's; allegedly, the remaining eleven pieces were not returned by Christie's to SJR.

SJR filed its original complaint on November 13, 2012. An amended complaint was filed on March 25, 2013 against Christie's as well as the Trust and other defendants. Only Christie's is a party to this appeal. By its amended complaint, SJR asserted a variety of claims related to Christie's alleged refusal to honor the Agreement to auction SJR's Eggleston photographs. Specifically, SJR claims that Christie's breached the parties' Agreement (Count III), breached its fiduciary duties (Count I), committed professional negligence (Count II), and breached the implied covenant of good faith and fair dealing (Count IV). SJR also claims (in Count XVI) that Christie's conspired with the Trust to manipulate the market for Eggleston artwork by preventing SJR's products from being sold. SJR also seeks (in Count XV) the return of its eleven pieces of Eggleston artwork still in Christie's possession.

As is relevant to the instant appeal, Christie's moved to dismiss the amended complaint pursuant to Tennessee Rule of Civil Procedure 12. Although Christie's motion to dismiss indicates that the parties are bound by a mandatory arbitration provision contained in the Agreement, the motion does not ask the court to compel arbitration or to stay the litigation. Instead, Christie's asks only for outright dismissal of the case:

> 3. "Part 2" of the Seller's Agreement sets forth the essential "Terms and Conditions of Sale," including without limitation, a provision requiring Plaintiff and Christie's to arbitrate "any dispute" between them.
>
> &ast; &ast; &ast;
>
> 5. Plaintiff is bound by the parties' mandatory arbitration provision as a matter of law. Plaintiff's allegation that the agreement at issue "does not include a mediation and arbitration provision, and the Plaintiff and Christie's did not agree to mediate or arbitrate any disputes between them" is demonstrably false.
>
> 6. Because Plaintiff agreed to arbitrate any dispute with Christie's, all of Plaintiff's claims against Christie's herein

3

should be dismissed.

\*                                  \*                                  \*

WHEREFORE, PREMISES CONSIDERED, Christie's moves this Court for an Order dismissing Plaintiff's claims without prejudice and awarding it such other and further relief as it deems just and proper under the circumstances. . . .

On May 31, 2013, the trial court heard arguments on the motion to dismiss. By order of June 25, 2013, the trial court denied Christie's motion. Specifically, the trial court held that the "straightforward" meaning of the ADR provision in the parties' agreement did not require SJR to mediate its claims against Christie's. Applying New York law, the court concluded that the dispute as to the ADR provision's scope was "easily resolved by examination of the language utilized within the [] Agreement." As set out in context above, the Agreement provides that "[b]efore either we or you start any court proceedings . . . we shall consent to the mediation of any dispute." The trial court held that the phrase "we shall consent" refers only to Christie's for two reasons. First, the court explained that the Agreement removes any possible ambiguity as to the meaning of the term "we" because it "contains an express designation that 'we' is to be construed to mean Christie's. Thus, where the agreement states that 'we shall consent to the mediation of any dispute,' it is to be understood as mandating Christie's consent, not [SJR's]." Second, the trial court noted that the surrounding context further supported giving the term "we" its defined meaning. Because the first few words of Christie's ADR provision "chose to employ the differential usage of 'we' and 'you' to refer to Christie's and to [SJR], respectively," the court concluded that the second usage of "we" in the very same sentence should be given the same defined meaning. Based upon the foregoing reasoning, the trial court concluded that only Christie's—and not SJR—has a contractual obligation to submit a dispute to mediation. And "[b]ecause mediation is a condition precedent to arbitration," the court held that SJR was not required to arbitrate the dispute. As the Chancellor concluded, the law cannot "create an obligation for a party where none exists."

On or about July 2, 2013, Christie's filed this interlocutory appeal from the trial court's denial of its motion to dismiss. The Notice of Appeal specifically states that Christie's "hereby appeals . . . from the Order denying its Motion to Dismiss, which motion sought enforcement of an arbitration provision . . . ." However, as set out in context above, the motion to dismiss does not, in fact, seek enforcement of the arbitration provision; rather, it seeks dismissal of the lawsuit. On July 30, 2013, SJR filed a motion in this Court, seeking dismissal of the appeal for lack of subject-matter jurisdiction. Specifically, SJR argued that because Christie's appeal was an interlocutory appeal based on the denial of a motion to

4

dismiss based on an arbitration agreement, this Court does not have jurisdiction over the appeal under Tennessee Code Annotated Section 29-5-319. By order of September 30, 2013, this Court held SJR's motion to dismiss the appeal under advisement, and gave the parties the opportunity to brief the question of jurisdiction, which they have now done. Accordingly, before reaching any substantive issues in this case, we will first adjudicate the motion to dismiss the appeal for lack of jurisdiction. *See* Tenn. R. App. P. 13(b) (stating that "[t]he appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review . . .).

Subject matter jurisdiction concerns the authority of the court to hear a matter and cannot be waived. ***Meighan v. U.S. Sprint Commc'ns Co.***, 924 S.W.2d 632, 639 (Tenn. 1996). Whether a court has subject matter jurisdiction over a case is a question of law that we review *de novo* with no presumption of correctness. ***Word v. Metro Air Servs., Inc.***, 377 S.W.3d 671, 674 (Tenn. 2012) (citing ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000)). Generally, Tennessee "appellate courts have jurisdiction over final judgments only." ***Bayberry Assocs. v. Jones***, 783 S.W.2d 553, 559 (Tenn. 1990); *accord* Tenn. R. App. P. 3(a).[1] "A final judgment resolves all of the issues in the case, leaving nothing else for the trial court to do." ***Ingram v. Wasson***, 379 S.W.3d 227, 238 (Tenn. Ct. App. 2011) (internal quotations omitted). By its nature, "[t]he denial of a motion to dismiss does not end a lawsuit or constitute a final judgment" and is, therefore, not immediately appealable. ***Richardson v. Tenn. Bd. of Dentistry***, 913 S.W.2d 446, 460 (Tenn. 1995). However, the Tennessee Uniform Arbitration Act, Tennessee Code Annotated Section 29-5-319, operates as a limited exception to the final judgment rule. It grants Tennessee appellate courts subject matter jurisdiction to consider interlocutory appeals in specifically enumerated circumstances involving arbitration agreements. As our Supreme Court recently explained, Section 29-5-319 determines the appealability of interlocutory orders involving arbitration agreements, including agreements within the Federal Arbitration Act ("FAA"). ***Morgan Keegan & Co. v. Smythe***, 401 S.W.3d 595, 604–607 (Tenn. 2013) (adopting the "majority view" that state appeal provisions, as opposed to those contained in the FAA, determine a state appellate court's jurisdiction to consider interlocutory appeals involving agreements

---

[1] Rule 3(a) of the Tennessee Rules of Appellate Procedure provides, in relevant part:

> In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties.

governed by the FAA). Accordingly, subject matter jurisdiction in this case is governed by Tennessee Code Annotated Section 29-5-319.

Tennessee Code Annotated Section 29-5-319 provides, in pertinent part, that:

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under § 29-5-303;
(2) An order granting an application to stay arbitration made under § 29-5-303(b);
(3) An order confirming or denying confirmation of an award;
(4) An order modifying or correcting an award;
(5) An order vacating an award without directing a re-hearing; and
(6) A judgment or decree entered pursuant to this part.

To the extent that the question of whether this Court has subject matter jurisdiction to hear this interlocutory appeal requires us to interpret the foregoing statutory provisions, we find guidance from our Supreme Court:

[O]ur role in construing a statute is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. To do this, we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of their statutory context. We avoid any forced or subtle construction that would limit or extend the meaning of the language. Every word in a statute is presumed to have meaning and purpose. If the statutory language is clear and unambiguous, we apply the statute's plain language in its normal and accepted use. We need look no further than the statute itself, enforcing it just as it is written.

*Keen v. State*, 398 S.W.3d 594, 610 (Tenn. 2012) (internal citations and quotation marks omitted); *see also* *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Leggett v. Duke Energy Corp.*, 308 S.W.3d at 851–52 (citing *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008)).

As set out above, Tennessee Code Annotated Section 29-5-319, gives this Court jurisdiction to hear interlocutory appeals from "[a]n order denying an application to compel arbitration made under § 29-5-303," or from "[a]n order granting an application to stay arbitration made under § 29-5-303(b)."[2]  In addition, the statute grants jurisdiction to this Court from orders that confirm, deny, modify, correct, or vacate an award.  In *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595 (Tenn. 2013), the Tennessee Supreme Court held that, in making a determination of whether jurisdiction exists, a reviewing court should consider the implication of the trial court's order in determining whether it falls within the enumerated exceptions set out at Tennessee Code Annotated Section 29-5-319:

---

[2] Tennessee Code Annotated Section 29-5-303 provides:

> (a) On application of a party showing an agreement described in § 29-5-302, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.
>
> (b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.
>
> (c) If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subsection (a), the application shall be made therein. Otherwise and subject to § 29-5-318, the application may be made in any court of competent jurisdiction.
>
> (d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.
>
> (e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.

7

> Court orders and judgments, like other documents, often speak
> as clearly through implication as they do through express
> statements. Accordingly, when construing orders and judgments,
> effect must be given to that which is clearly implied, as well as
> to that which is expressly stated. ***Sosin v. Sosin***, 300 Conn. 205,
> 14 A.3d 307, 316 (2011); ***Dairyland, Inc. v. Jenison***, 207
> N.W.2d 753, 754 (Iowa 1973); ***State ex rel. State Farm Mut.***
> ***Auto. Ins. Co. v. Bedell***, 228 W.Va. 252, 719 S.E.2d 722, 737
> (2011).

***Morgan Keegan & Co. v. Smythe***, 401 S.W.3d at 608. In ***Smythe***, the Court held that subject matter jurisdiction was established because the order appealed "necessarily denied Mr. Smythe's request for confirmation when it granted Morgan Keegan's petition to vacate the award." ***Id***. "This conclusion is buttressed by Tenn. Code Ann. § 29-5-313(d), which states that '[i]f the application to vacate is denied . . . the court shall confirm the award.'" ***Id***. Even applying the inferences required under the ***Smythe*** holding, we conclude that the trial court's order does not fall within the enumerated exceptions set out at Tennessee Code Annotated Section 29-5-319.

As discussed above, the order appealed in this case denies Christie's motion to dismiss on the ground that the parties' Agreement requires Christie's—and not SJR—to arbitrate any disputes. We cannot infer from that holding that the court either denied an application to compel arbitration or granted an application to stay arbitration. This is especially true in light of the fact that Christie's motion to dismiss did not request the trial court to compel arbitration. Rather, in its motion, Christie's sought only dismissal of the lawsuit under Tennessee Rule of Civil Procedure 12; consequently, Christie's did not make an "application" to compel arbitration pursuant to Tennessee Code Annotated Section 29-5-303, *see* footnote 2 *supra*. The trial court, in declining to dismiss SJR's complaint, simply issued a ruling on the specific relief requested by Christie's in its motion. Without a request to compel arbitration, the trial court was certainly not required to rule on that issue. Thus, based on the relief requested by Christie's and the limited order of the trial court, the enumerated exceptions found at Sections 29-5-319(a)(1) or (2) do not provide this court with subject matter jurisdiction. Furthermore, unlike in ***Smythe***, no award was issued in this case such that the trial court's order could fall into the exceptions set out at Sections 29-5-319(a)(3), (4), or (5). Rather, giving as much inference as the order will allow (which we must do under ***Smythe***), we can only conclude that the order appealed is simply an order denying a Tennessee Rule of Civil Procedure 12 motion to dismiss; accordingly, it is not an order entered under the Tennessee Uniform Arbitration Act so as to fall under Section 29-5-319(a)(6). While Christie's certainly could have sought an order compelling arbitration, nothing changes the fact that it simply chose not to request that relief. Just as a court will not

rewrite a contract to relieve a party from its own unwise decisions, *see Dobbs v. Guenther*, 846 S.W.2d 270, 276 (Tenn. Ct. App. 1992) (noting some limited exceptions), this Court cannot simply assume subject matter jurisdiction when the parties have failed to comply with the statute conferring such jurisdiction. We recognize that the holding in **Smythe** requires a court to give effect to what is implied in an order; however, we do not understand the **Smythe** holding to reach so far as to require relief that is not requested by the parties.

The case of **Person v. Kindred Healthcare, Inc.**, No. W2009-01918-COA-R3-CV, 2010 WL 1838014 (Tenn. Ct. App. May 7, 2010), is highly analogous to the instant appeal. In **Person**, as in the instant case, the Appellant filed its motion in the trial court pursuant to Rule 12.02(6). **Person**, 2010 WL 1838014, at *4. However, as in the instant case, "nowhere in its motion . . . did [the Appellant] move the court to stay the proceedings and to compel arbitration." *Id*. Rather, as in this case, the Appellant in **Person** "moved the court to . . . dismiss the complaint as 'barred' by the alleged ADR agreement." *Id*. In concluding that Tennessee law does not permit interlocutory appeals as of right from the denial of motions to dismiss based on arbitration agreements, the **Person** Court concluded that Tennessee Code Annotated Section 29-5-319 only authorizes appeals from court orders denying a motion to stay the proceedings and to compel arbitration. *Id*. The same is true in the instant appeal. Because Christie's never moved the trial court to stay the proceedings and to compel arbitration, and because the lower court never entered an order denying such request, this Court lacks subject matter jurisdiction to adjudicate the appeal under Tennessee Code Annotated Section 29-5-319. **Person**, 2010 WL 1838014, at *4.

In its brief, Christie's calls the jurisdictional requirements "hyper-technical," and asks this Court to treat its motion to dismiss as "the functional equivalent of a motion to compel arbitration under the Tennessee statute." This we cannot do. It is well settled that a court acting without subject matter jurisdiction acts without authority, and its orders are void. **Meighan v. U.S. Sprint Commc'ns Co.**, 924 S.W.2d 632, 639 (Tenn.1996); **Shelby County v. City of Memphis**, 365 S.W.2d 291, 292 (Tenn. 1963). Moreover, we rejected a similar argument in **Person**, noting that:

> We cannot agree with Kindred Healthcare that subject matter considerations involve technical matters that may be disregarded by the Court. We also cannot agree that the legislature's narrowly carved exception to the final judgment requirements of the Tennessee Rules of Appellate Procedure may be broadened to encompass insufficient filings in the trial court.

**Person**, 2010 WL 1838014, at *5.

Because this Court lacks subject matter jurisdiction to adjudicate this interlocutory appeal, we dismiss the appeal. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant, Christie's, Inc., and its surety.

_____

J. STEVEN STAFFORD, JUDGE